IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | NO. 3:18-cr-00273 |
| v. | ) | JUDGE RICHARDSON |
| | ) | |
| MAJOK CHOL | ) | |

## **MEMORANDUM OPINION & ORDER**

Before the Court is Defendant Majok Chol's Motion to Suppress (Doc. No. 27, "the Motion"). Via the Motion, Defendant seeks to suppress all evidence obtained from his person and vehicle by Nashville Metropolitan Police Department officers on July 23, 2018. (*Id*. at 1). Defendant contends the evidence was obtained in violation of his Fourth Amendment rights guaranteed by the United States Constitution. (*Id*.) For the reasons set forth below, Defendant's Motion is **DENIED**.

An officer may conduct an investigatory stop that does not violate the Fourth Amendment "if he has reasonable, articulable suspicion that the person has been, is, or is about to be engaged in criminal activity." *United States v. Johnson*, 620 F.3d 685, 692 (6th Cir. 2010) (citation omitted). Reasonable suspicion "must be based on specific, objective facts, and requires that 'the detaining officers have a particularized and objective basis for suspecting the particular person stopped of criminal activity.'" *Id.* (citation omitted). A court must consider the "totality of circumstances" when determining whether reasonable suspicion existed. *Id.*; *see also United States v. Witty*, No. 16-CR-218 (MKB), 2017 WL 3208528, at *8 (E.D.N.Y. July 26, 2017) (holding that officers lawfully stopped the defendant where "the officers had sufficient facts to support probable cause that [the defendant] had committed a violation of the Parks Code" when the defendant was in a closed public park).

"Reasonable suspicion, a standard which is less burdensome than the probable cause standard, may later blossom into probable cause if additional facts come to the attention of the detaining officer." *United States v. Tarango–Hinojos*, 791 F.2d 1174, 1175-76 (5th Cir. 1986) (citing *United States v. Brignoni–Ponce*, 422 U.S. 873, 881-82 (1975)). A warrantless arrest that is supported by probable cause does not violate the Fourth Amendment. *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004). "Probable cause exists where the facts, at the time of the arrest, were sufficient to lead a prudent person to believe that a crime had been committed or was in the process of being committed." *United States v. Jimenez*, 654 F. App'x 815, 819 (6th Cir. 2016) (citing *Klein v. Long*, 275 F.3d 544, 550 (6th Cir. 2001)). Whether probable cause exists "depends on the reasonable conclusions 'drawn from the facts known to the arresting officer at the time of the arrest.'" *Id.* (citing *Devenpeck*, 543 U.S. at 152).

The search incident to lawful arrest doctrine authorizes the warrantless search of an arrestee's person and the area within his immediate control. *See United States v. Robinson*, 414 U.S. 218, 235 (1973) (holding that after "a lawful custodial arrest a full search of the person is not only an exception to the warrant requirement of the Fourth Amendment, but is also a 'reasonable' search under that Amendment"); *see also United States v. Campbell*, 486 F.3d 949, 955 (6th Cir. 2007) (stating that "[o]nce a lawful arrest has been made, the police officer is permitted to search the individual"). The area "within a person's immediate control" includes "the area from within which he might gain possession of a weapon or destructible evidence." *Northrop v. Trippett*, 265 F.3d 372, 379 (6th Cir. 2001). The officers "may seize both contraband and any instrumentalities, fruits, or evidence of a crime that they discover in the course of the search." *United States v. Stewart*, 315 F. App'x 554, 559 (6th Cir. 2009) (citing *United States v. Edwards*, 415 U.S. 800, 802-05 (1974)).

"The inevitable discovery doctrine, an exception to the exclusionary rule, allows unlawfully obtained evidence to be admitted at trial if the government can prove by a preponderance that the evidence inevitably would have been acquired through lawful means." *United States v. Kennedy*, 61 F.3d 494, 497 (6th Cir. 1995). An inventory search is a recognized exception to the warrant requirement that allows law enforcement officers to search vehicles, as well as contents of closed containers therein, when they do so pursuant to standardized procedures. *See Colorado v. Bertine*, 479 U.S. 367, 371-72 (1987).

> This exception recognizes that in addition to investigating crime, officers have an established caretaking role vis-à-vis the public. Inventory searches further legitimate goals of protecting property from theft or damage, preventing property disputes between the owner and police, and mitigating safety risks inherent in taking possession of unknown items. But officers must conduct a permissible inventory search in good faith, not as a pretext for criminal investigation. In conducting an inventory search, officers do not enjoy their accustomed discretion; they simply follow the applicable policy.

*United States v. Tackett*, 486 F.3d 230, 232 (6th Cir. 2007) (internal citations omitted). Tennessee law provides that "[a] police department may take into custody any motor vehicle found abandoned, immobile, or unattended on public or private property." Tenn. Code Ann. § 55-6-104.

On June 13, 2019, the Court held an evidentiary hearing on Defendant's Motion to Suppress. At the conclusion of the hearing, the Court made a tentative ruling from the bench on the Motion based upon the above-described principles of law. The Court found that on the night of July 23, 2018, the officers had reasonable suspicion to approach Defendant based on a suspected violation of Tennessee's criminal trespassing statute (Tenn. Code. Ann. § 39-14-405). (Doc. No. 40 at 107:11-21). During the course of the investigatory detention, the officers confirmed Defendant's identity, and confirmed that Defendant was the owner of the car parked in the J. Piercy Priest Park parking lot. (*Id*. at 107:22-108:7). These facts gave rise to probable cause that Defendant committed criminal trespass in violation of Tennessee law, and the officers thereafter

lawfully arrested Defendant.[1] (*Id*.). As officers did so, Defendant resisted arrest within the meaning of Tennessee Code Annotated Section 39-16-602, as that statute has been broadly interpreted by Tennessee courts; thus, probable cause also existed to arrest him for a violation of that statute. (*Id*. at 109:22-110:25).

As for the search of the vehicle, the Court did not find Officer Dixon's testimony regarding his observations of marijuana in the vehicle to be credible; therefore, the Court found that the automobile exception to the warrant requirement did not justify the officers' entrance into the vehicle, contrary to the Government's argument. (*Id*. at 111:1-17). Nevertheless, the Court found that the inevitable discovery doctrine justified the seizure of the evidence from Defendant's vehicle because it is the Metro Nashville Police Department's standard procedure to tow, and subsequently search, any car that is abandoned by way of the owner being arrested and kept in custody. (*Id*. at 111:18-112:6). For all of these reasons, the Court tentatively concluded the seizure of the evidence from Defendant's person and vehicle was lawful under the Fourth Amendment. (*Id*. at 112:4-6).

Prior to issuing its final ruling, however, the Court offered Defendant the opportunity to submit a post-hearing brief on two issues, which the Court noted potentially could affect the Court's previously summarized initial findings. Those issues were: (1) whether Metropolitan Nashville Police Department officers have jurisdiction on the federal land at issue (*i.e.*, at J. Percy Priest Lake) to lawfully arrest Defendant for violations of state law and, if not, the resulting effect of that answer on the suppression issues raised via the Motion; and (2) whether the "must cite" statute, Tennessee Code Annotated Section 40-7-118, prohibited officers from attempting to handcuff Defendant under the circumstances in which they attempted to handcuff him according

---

[1] This finding was contingent upon the resolution of the issue discussed in the post-hearing briefing, as analyzed below.

to the testimony at the suppression hearing and, if so, whether the violation of such prohibition renders Defendant's subsequent arrest for resisting arrest "fruit of the poisonous tree" for Fourth Amendment purposes.[2] (Doc. No. 36).

On July 10, 2019, Defendant filed his post-hearing brief (Doc. No. 29). In the brief, Defendant addresses only the second issue in which the Court invited further briefing on; thus, the Court will not address the first issue and considers any argument as to that issue to be waived. On July 29, 2019, the Government filed its response (Doc. No. 43).[3] Accordingly, the issue is now ripe for review.

I. *The effect of Tennessee Code Annotated Section 40-7-118 on the lawfulness of Defendant's arrest*

Tennessee Code Annotated Section 40-7-118, also known as Tennessee's "must cite" statute, provides that an officer "who has arrested the person for the commission of a misdemeanor committed in the . . . officer's presence . . . shall issue a citation to the arrested person to appear in court in lieu of the continued custody and the taking of the arrested person before a magistrate." Tenn. Code Ann. § 40-7-118(b)(1). The "must cite" statute enumerates seven circumstances in which a citation should not issue:

> (1) The person arrested requires medical examination or medical care, or if the person is unable to care for the person's own safety; (2) There is a reasonable likelihood that the offense would continue or resume, or that persons or property would be endangered by the arrested person; (3) The person arrested cannot or will

---

[2] Resolution of this issue is critical to the Court's final ruling because if the arrest was not lawful, then the subsequent search incident to arrest and inventory search would be unlawful.

[3] The Court's Order provided that "Defendant may submit a post-hearing brief, to which the Government may respond, on—*and only on*—the following [above-mentioned] issues." (Doc. No. 36) (emphasis added). The Government's brief went far beyond responding to Defendant's brief and, relatedly, also far beyond the specified issues. In particular, the Government argued at length that the Court should reconsider its credibility determination as to the testifying officer. The Court declines to engage in such reconsideration, because: (1) the request and argument for reconsideration is outside the authorized scope of the brief in which they were made; and (2) it is not necessary in order to decide the Motion (in the Government's favor). If the Government believes it has an independent basis to file a request for reconsideration in a different document at this late stage, it is free to do so. If it does, however, the Court anticipates elaborating on the reasons for its credibility determination with the kind of frankness that the Court, prior to seeing the Government's request for reconsideration, would have assumed the Government would be quite eager to avoid.

not offer satisfactory evidence of identification, including the providing of a field-administered fingerprint or thumbprint which a peace officer may require to be affixed to any citation; (4) The person demands to be taken immediately before a magistrate or refuses to sign the citation; (5) The person arrested is so intoxicated that the person could be a danger to the person's own self or to others; (6) There are one (1) or more outstanding arrest warrants for the person; or (7) The person is subject to arrest pursuant to § 55-10-119 [(which provides that "[a]n officer shall detain a driver without a warrant" if the driver: (i) is involved in an accident resulting in serious bodily injury or death; (ii) cannot produce a valid driver's license; or (iii) does not have proof of insurance)].[4]

Tenn. Code Ann. § 40-7-118(c)-(d).

Defendant cites *State v. Walker*, 12 S.W.3d 460 (Tenn. 2000), in support of the argument that Defendant's arrest for criminal trespass was unlawful. In *Walker*, the Tennessee Supreme Court held that the "must cite" statute creates a "substantive right of freedom from arrest for one accused of a commission of a minor misdemeanor unless one of the statutory exemptions exists." 12 S.W.3d at 464. The court also held that it is the State's burden to prove an exception applies to justify a custodial arrest. *Id*. at 465. Defendant contends that because the government cannot demonstrate that one of the enumerated statutory exceptions exists under the circumstances, "both the custodial arrest and the subsequent search [of Defendant] are unlawful." (Doc. No. 39 at 2-3 (citing *Walker*, 12 S.W.3d at 465)). Defendant further argues that *United States v. Di Re*, 332 U.S. 581 (1948), "requires adherence to the procedures set forth in [the 'must cite' statute]." (Doc. No. 39 at 4). In *Di Re*, the Supreme Court held that in absence of an applicable federal statute, the law of the state where an arrest without a warrant takes place determines its validity. 332 U.S. at 589.

In response, the Government argues that Defendant's argument ignores pertinent United States Supreme Court case law. In *Virginia v. Moore*, 553 U.S. 164 (2008), Virginia law enforcement officers stopped the defendant and determined that he did not have a valid driver's

---

[4] Defendant contends there are eight circumstances in which a citation should not issue. However, one of those circumstance (*i.e.*, that there is a reasonable likelihood the arrestee would fail to appear in court) was deleted by 2019 Pub. Acts, c. 316, § 1, eff. May 9, 2019.

license, which is a misdemeanor under Virginia law. 533 U.S. at 167. Virginia's "must cite" statute requires that an officer issue a citation, rather than perform a custodial arrest, absent the presence of other circumstances. *Id*. (citing Va. Code Ann. § 19.2-74). Nevertheless, the officers placed the defendant under arrest and discovered contraband upon a search incident to arrest of the defendant's person. *Id*. The Virginia Supreme Court reversed the trial court's denial of the defendant's motion to suppress and held that the "must cite" law had been violated when the officers arrested the defendant rather than issuing a citation; therefore, the evidence obtained from his person should be suppressed because the search incident to the unlawful arrest violated the defendant's Fourth Amendment rights. *Id*. at 168.

The United States Supreme Court reversed the Virginia Supreme Court and held "that warrantless arrests for crimes committed in the presence of an arresting officer are reasonable under the Constitution, and that while States are free to regulate such arrests however they desire, *state restrictions do not alter the Fourth Amendment's protections.*" *Moore*, 553 U.S. at 176 (emphasis added). The Supreme Court explained that "whether or not a search is reasonable within the meaning of the Fourth Amendment,' . . . has never 'depend[ed] on the law of the particular State in which the search occurs.'" *Id*. at 172 (quoting *California v. Greenwood*, 486 U.S. 35, 43 (1988)). The Supreme Court explicitly declined to extend its *Di Re* opinion to Fourth Amendment limitations and explained that "[n]either *Di Re* nor the cases following it held that violations of state arrest law are also violations of the Fourth Amendment, [and] when States go above the Fourth Amendment minimum, the Constitution's protections concerning search and seizure remain the same." *Id*. at 170-73. In other words, for numerous reasons set forth in Justice Scalia's opinion, a search incident to arrest is permissible under the Fourth Amendment if the arrest is based on probable cause—and not only if the arrest is both based on probable cause *and*

permissible under the law of the particular applicable state.

*Moore* controls in this case and conclusively defeats Defendant's argument. The Court concluded at the evidentiary hearing that Defendant's arrest for criminal trespass was supported by probable cause, and therefore was not in violation of the Fourth Amendment. *See Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001) ("If an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender."). As articulated in *Moore*, Tennessee law does not affect this analysis. *Moore*, 553 U.S. at 176 ("[S]tate restrictions do not alter the Fourth Amendment's protections."); *see also Edgerly v. City & Cnty. of San Francisco*, 599 F.3d 946, 956 (9th Cir. 2010) (holding that "[the defendants] arrest was constitutional, even though it was impermissible under state law" because "'state restrictions [on arrest] do not alter the Fourth Amendment's protections[.]'" (quoting *Moore*, 553 U.S. at 164)); *Conrad v. Owen*, No. 16-2034-TMP, 2017 WL 5653895, at *4 (W.D. Tenn. Feb. 17, 2017) (relying on *Moore* in holding that "[t]o the extent [Tenn. Code Ann.] § 40-7-118 creates 'a presumptive right to be cited and released for the commission of a misdemeanor,' such a right is a matter of Tennessee law that does not affect [the arrestee]'s Fourth Amendment rights." (quoting *Walker*, 12 S.W.3d at 464)). Therefore, Defendant's arrest for criminal trespass was not in violation of his Fourth Amendment rights, and the contraband subsequently seized from his person and vehicle will not be suppressed.

## CONCLUSION

The Court's resolution of the issue presented in Defendant's post-hearing brief does not alter the findings or the initial ruling the Court made on the record at the evidentiary hearing held on June 13, 2019. The resolution reveals that Defendant has not, by raising this issue, managed to turn an otherwise constitutional seizure into an unconstitutional seizure. Therefore, the Court

**DENIES** the Motion to Suppress (Doc. No. 27) for the reasons stated on the record at the evidentiary hearing.

IT IS SO ORDERED.

*Eli Richardson*
ELI RICHARDSON
UNITED STATES DISTRICT JUDGE